UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN DUBOSE AND | § | |
| JERRY DUBOSE, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No.  SA-10-CA-0804-XR |
| v. | § | |
| | § | |
| COMMIE LAWRENCE HISEY, D.O. | § | |
| AND THE GONZALES HEALTH CARE | § | |
| SYSTEM, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Defendants' Motion for Summary Judgment (Docket No. 26).  After consideration of the motion, record, and applicable law, the Court grants Defendants' motion.

## Background

Plaintiff John Dubose has chronic obstructive pulmonary disease, for which Defendant, Dr. Hisey, treated Mr. Dubose for many years at Sievers Clinic, a part of the Gonzales Healthcare System.

In 2003, during their doctor-patient relationship, the Duboses agreed to sell their 33-acre homestead to Dr. Hisey under a ten-year agreement that allowed the Duboses to remain living in their home and continue to possess their land until 2013.  Plaintiffs allege this sale was  "at a price that was grossly less than market value." Sometime after this agreement, Plaintiffs' relationship with Dr. Hisey deteriorated, and they began seeing other doctors at the same clinic for treatment.

1

At some point, Dr. Hisey requested a release from Plaintiffs to build a home on a portion of the land before the expiration of the ten-year agreement.  Plaintiffs allege Dr. Hisey pressured them into entering this agreement, and that the release price of $5,000 was also "grossly below market value."  Shortly after obtaining this release, Dr. Hisey sent a termination of medical services letter to Plaintiffs informing them that neither he, nor any other doctor at the Clinic, would treat Plaintiffs after a period of 30 days.[1] Plaintiffs claim that their small community has no alternative facilities where Mr. Dubose can be treated.  Plaintiffs state that there is a hospital that provides only emergency services, not the regular care Mr. Dubose requires, and only two non-Clinic doctors practice in Gonzales, Texas, neither taking new patients.  Because of the termination of treatment at the Clinic, Plaintiffs have had to travel "extended distances" incurring related expenses that they would not have to incur if they continued to be treated at the Clinic.

### Plaintiffs' Claims

Plaintiffs' Second Amended Complaint is the live pleading in this case.  The first count of Plaintiffs' complaint alleges that Defendants violated 42 U.S.C. § 1983 by acting under color of state law to deprive Plaintiffs of their rights.

Plaintiffs first complain that the Gonzales Healthcare System has an official written policy that allows patients to be terminated from receiving medical care without any standards or due

---

[1]The letter dated September 11, 2009 states in part, as follows: "Due to recent personal issues between you and me, I feel it is in my best professional interest to sever your relationship with Sievers Medical Clinic....  I appreciate your desire to see other providers in our clinic, but I am the supervising physician for the physician assistants ... and the nurse practitioner....  As such, I have to review each of their charts for your visits....  Likewise, we share call among the physicians. Regardless of your choice of providers, I would be responsible for your care at some point.  Although I can maintain my objectivity in your care, the anger and frustration you continue to voice at your visits at this clinic cause me grave concern.  To that end, in order to prevent any future problems between us, I will sever this relationship 30 days from the date of this letter...."

2

process afforded.  Plaintiffs cite to Policy No. 27-1201 ("only the physician can terminate the relationship with the patient").  Plaintiffs argue that Dr. Hisey is the Medical Director of the Clinic and a "policymaker" for the Gonzales Healthcare System.  They allege that "Defendants' policy of terminating patients from all of the doctors' medical care at the Clinic violated the constitutional rights of Plaintiffs to seek non-emergency medical care from a Medicare institution, agency or person.  The policy was the moving force behind the constitutional violation, and Plaintiffs' injuries resulted from the execution of such policy."

In addition, Plaintiffs argue that Defendants deprived them of substantive and procedural rights provided by the Fourteenth Amendment to the United States Constitution.  They allege that their substantive due process rights were violated when they were deprived of their "freedom of choice of Medicare providers...."

Plaintiffs also allege that they were denied due process and notice.  They further allege that they were denied equal protection.  They argue that although an individual physician may terminate a patient's treatment under certain circumstances, " a physician is not entitled to prevent all other medical providers at a government funded facility from treating patients based on the physician's personal vendetta."

Plaintiffs' second count alleges that Defendants violated section 1983 by committing acts in violation of the First Amendment.  Specifically, Plaintiffs allege that their speech was a matter of public concern.  They allege that they complained to a Clinic physician that they no longer wanted to be seen by Dr. Hisey, and that as a result of this complaint they were denied all treatment at the Clinic.

3

**Defendants' Motion for Summary Judgment**

Defendants seek summary judgment, arguing that Dr. Hisey is not a state actor.  They also seek summary judgment on the basis that Gonzales Healthcare System did not have any official policy that deprived Plaintiffs of any constitutional rights.  As a result of these deficiencies, Defendants argue that all other claims raised by Plaintiffs fail as a matter of law.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). The non-moving party cannot defeat summary judgment by resting on the allegations of his complaint, forwarding conclusory allegations and unsubstantiated assertions, or raising nothing more than "metaphysical doubt as to the material facts."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir.), *cert. denied*, —— U.S. ——, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010).

**Analysis**

**Section 1983 Generally**

To prevail on a claim asserted under § 1983, the plaintiff must establish 1) a deprivation of a right secured by the Constitution and 2) the deprivation of that right by persons acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Municipalities and other local government bodies may be liable under Section 1983, but only if three elements are proven: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a violation of a constitutional right caused by, or whose "moving force" is, the policy or custom. *Piotrowski v. City of Houston*., 237 F.3d 567, 578 (5th Cir. 2001) (*citing Monnell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978)) (("[A]

4

policymaker, an official policy and the 'moving force' of the policy are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."). A municipality or other local government body cannot be liable for a Section 1983 violation under a theory of respondeat superior. *Id.* Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* Generally, a plaintiff must show a pattern of similar violations; a single constitutional violation gives rise to municipal liability only when the single decision or act was undertaken by a person with final policymaking authority. *Valle v. City of Houston*., 613 F.3d 536, 542, 547 (5th Cir. 2010).

Gonzales Healthcare System is a special district formed pursuant to Tex. Special Districts Code §§ 1032.001, et seq. Pursuant to section 1032.103, the Gonzales Healthcare System board of directors shall manage, control, and administer the hospital system. Gonzales Healthcare System owns Gonzales Memorial Hospital and the Sievers Medical Clinic. Although the parties make a number of references to the Gonzales Memorial Hospital, the only challenge raised in this lawsuit pertains to the Sievers Medical Clinic.

Dr. Hisey and other professionals provide medical services at the Sievers Medical Clinic. Dr. Hisey is a member of the MVH Medical Group, P.A., which, pursuant to a Services Agreement, staffs Sievers Medical Clinic with qualified physicians. Pursuant to a separate Agreement, Dr. Hisey serves as the Medical Director of Sievers Medical Clinic. He receives $4,000 per month from the Clinic for these services. The Agreement states that Dr. Hisey is not an employee of the Clinic and that all parties recognize an independent contractor relationship.

In order to establish liability under section 1983, the plaintiffs must prove that they have been deprived of a federal statutory or constitutional right by someone acting "under color of" state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Purely private conduct is not within the reach of the statute. The inquiry in this case is whether the actions of Dr. Hisey may be fairly attributed to the Gonzales Healthcare System, or whether Dr. Hisey is a person for whom the Gonzales Healthcare System may fairly be held responsible. *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)("state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"). The Supreme Court has used several tests for deciding whether a private actor's conduct can be fairly attributable to the State. *See Hebrew v. Houston Media Source, Inc.*, 2010 WL 2944439 (S.D. Tex. 2010)(summarizing tests).

In this case, the Plaintiffs do not allege that Gonzales Healthcare System engaged in any act of "coercive power." Nor is it alleged that Gonzales Healthcare System provided any "significant encouragement, either overt or covert" to Dr. Hisey to discharge the Plaintiffs. The only "joint activity" alleged in this case is that Gonzales Healthcare System has a policy that states only a physician can terminate a relationship with the patient. Otherwise, there is no evidence of any other "pervasive entwinement" between Gonzales Healthcare System and Dr. Hisey in the composition and workings of the clinic. Dr. Hisey and other professionals merely provide medical services at the Sievers Medical Clinic pursuant to a Services Agreement. Dr. Hisey is not a policymaker for Gonzales Healthcare System. Dr. Hisey did not draft or adopt the policy at issue in this case. Although Dr. Hisey may be the official decision-maker for health care decisions, this does not transform him into a policy-maker for Gonzales Healthcare System. Indeed, the agreements between

Dr. Hisey and Gonzales Healthcare System disavow any such authority.

Dr. Hisey is not a person acting under "color of state law" given the facts of this case. Accordingly, Plaintiffs' section 1983 claims asserted against him are dismissed.

As noted above, pursuant to *Monell*, Gonzales Healthcare System may be liable under section 1983, but only if three elements are proven: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a violation of a constitutional right caused by, or whose "moving force" is, the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiffs fail to establish the *Monell* elements. The only official policy they complain of merely states only a doctor can terminate a patient relationship. This is not an improper policy. They further fail to establish a violation of a constitutional right caused by, or whose "moving force" is, the policy. Plaintiffs argue that the policy was defective inasmuch as no other guidelines or requirements were provided in the policy to limit a doctor's ability to terminate the patient/doctor relationship. However, even if this court were to find that the policy was inadequate or defective (this Court makes no such finding), Plaintiffs essentially are complaining that the Gonzales Healthcare System was negligent in adopting an insufficient policy. Plaintiffs do not plead, nor do they provide any evidence to establish that the Gonzales Healthcare System acted with deliberate indifference to Plaintiffs' constitutional rights. Finally, Plaintiffs have presented no evidence showing that the Gonzales Healthcare System's policy was the "moving force" behind any alleged constitutional violations. To the extent that Plaintiffs are arguing that Gonzales Healthcare System "ratified" the termination decision, Plaintiffs present no evidence of any board action ratifying the decision. Otherwise, as discussed herein, the Board had no authority to require its independent

contractor physicians to maintain a medical relationship with the Plaintiffs.

**Substantive Due Process Claim**

A valid claim under Section 1983 for violation of the Due Process Clause of the Fourteenth Amendment consists of three elements.  First, Plaintiffs must assert a "recognized liberty or property interest within the purview of the Fourteenth Amendment; second, the intentional or reckless deprivation of that interest; and third, that this deprivation was under color of law.[2]

Relying upon 42 U.S.C. §1395a(a)[3], Plaintiffs assert that as Medicare recipients they have a right cognizable through the Fourteenth Amendment to receive medical treatment from a facility they choose.

The Due Process Clause of the Fourteenth Amendment protects individuals from "unwarranted government interference, but it does not confer an entitlement to *governmental aid* as may be necessary to realize the advantages of liberty guaranteed by the clause."[4]   Courts are cautioned to "resist the temptation to augment the substantive reach of the Fourteenth Amendment."[5]

There is little caselaw interpreting 42 U.S.C. §1395a(a).  The plain language of the statute, however, merely states that an individual entitled to insurance benefits *may* obtain health services from any institution or person, *if* such an institution or person undertakes to provide him such

---

[2]*Walton v. Alexander*, 44 F.3d 1297, 1301 (5th Cir. 1995)(citing *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)(citations omitted), *cert. denied*, 498 U.S. 1040 (1991).

[3]"Any individual entitled to insurance benefits under this subchapter may obtain health services from any institution, agency, or person qualified to participate under this subchapter if such institution, agency, or person undertakes to provide him such services."

[4]*Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995)(citing *DeShaney v. Winnebago County Dep't. of Social Servs.*, 489 U.S. 189, 196 (1998)).

[5]*Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990).

services.  The plain language of the statute does not require a medical professional to render such services.  If this case dealt with the denial of services for some discriminatory purpose, this analysis may be different.  However, in this case where the dispute centers upon the Plaintiffs' dissatisfaction with private contractual agreements entered into with Dr. Hisey, Dr. Hisey terminating the medical relationship because of this animosity, and no involvement by Gonzales Healthcare System, this Court will adhere to the cautionary advisory to "resist the temptation to augment the substantive reach of the Fourteenth Amendment."

### Procedural Due Process Claim

A valid claim for deprivation of procedural due process must show first that a protected liberty or property interest existed and was interfered with, and second that the procedures used to effect that interference or deprivation were not "constitutionally sufficient."[6]  Plaintiffs complain that they were entitled to notice and an opportunity to be heard before their medical services were terminated.

Plaintiffs, however, fail to establish the protected interest at stake.  As indicated above, none of the medical providers were legally obligated to provide services to Plaintiffs.  Alternatively, Plaintiffs fail to establish that the letter sent by Dr. Hisey providing for 30 days to secure a new physician was not constitutionally sufficient.

### Equal Protection Claim

In their Second Amended Complaint, Plaintiffs allege simply that they are a "class of one." The Supreme Court has recognized a class of one equal protection claim in *Village of Willowbrook*

---

[6] *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)(citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)).

9

*v Olech,* 528 U.S. 562 (2000), but Plaintiffs fail to establish that they were treated differently from others similarly situated without rational basis.  They further allege that "a physician is not entitled to prevent all other medical providers at a government funded facility from treating patients based on the physician's personal vendetta."  Defendants' summary judgment evidence, however, establishes that all medical providers at the clinic agreed to the termination of the doctor-patient relationship.

### First Amendment Claim

Plaintiffs allege that Defendants retaliated against them because they complained about Dr. Hisey.[7]  They further allege that their speech was a matter of public concern.  The Court concludes that, as a matter of law, this dispute and any speech was not a matter of public concern.  This dispute dealt with a private contractual dispute between the Plaintiffs and Dr. Hisey.  In the alternative, if Plaintiffs are asserting their claim arguing retaliation akin to a prisoner retaliation case, the Court concludes that Plaintiffs have failed to present evidence of a causal connection between any protected activity and the adverse action.  Plaintiffs expressed a desire that Dr. Hisey not treat them, and because Dr. Hisey was the medical director supervising certain medical professionals in the Clinic and was part of the "on call" system, it was deemed necessary to terminate the Plaintiffs' medical relationship.

### Conclusion

Defendants' Motion for Summary Judgment is granted.  The Clerk is directed to enter a judgment that Plaintiffs take nothing.  Costs shall be awarded to Defendants and a Bill of Costs in

---

[7]The only competent summary judgment evidence on this issue is that John Dubose, while at the Sievers Clinic, called Dr. Hisey a "son of a bitch" and thereafter told two other medical professionals that they did not want to be seen by Dr. Hisey anymore.

the form required by the Clerk of Court, together with supporting documentation, shall be filed within fourteen days of the Judgment.

It is so ORDERED.

SIGNED this 29th day of November, 2011.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE